IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JOSEPHINE LOUISE SALAS, as Personal Representative of the Estate of Carlos Lopes-Salas, Jr., | ) ) ) ) | Civ. No. 18-00113 HG-WRP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| TYLER PARSON; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10; DOE GOVERNMENTAL UNITS 1-10, | ) ) ) ) ) | |
| | ) | |
| Defendant. | ) ) | |

**ORDER GRANTING DEFENDANT TYLER PARSON'S MOTION FOR SUMMARY JUDGMENT (ECF No. 57)**

On March 23, 2016, Carlos Lopes-Salas, Jr. ("Lopes-Salas" or "Carlos") was fleeing from arrest based on probable cause for felony Burglary in the First Degree.  Defendant Honolulu Police Officer Tyler Parson ("Officer Parson") and several other Honolulu Police Officers were in pursuit of Lopes-Salas when he was shot.  Lopes-Salas died two years and four months later.

Lopes-Salas fled from arrest by running through the grounds and main buildings of the Pacific Marina Inn ("Inn").  He had a semi-automatic 9mm Glock pistol in his hand.  Inn workers and bystanders were present as the Officers chased the armed offender.  During the pursuit, Officer Parson observed Lopes-Salas suddenly raise the firearm to his shoulder.  Officer Parson saw Lopes-Salas's grip tighten on the handle of the firearm with

1

his finger on the trigger.  Lopes-Salas's actions put Officer
Parson in fear for his own safety, the safety of the other
Officers, and the bystanders.  Officer Parson fired two rounds,
striking Lopes-Salas once.  Lopes-Salas was detained and
arrested.  Lopes-Salas was transported to Queen's Medical Center
where he received treatment for the gunshot wound.

Five days later, on March 28, 2016, Lopes-Salas was charged
with four offenses relating to possessing the firearm and
ammunition during the pursuit.  One charge was for Terroristic
Threatening in the First Degree for threatening Officer Parson
with the firearm.  (Hawaii Revised Statutes § 707-716(1)(e)).
Lopes-Salas pled no contest to all four charges, including to the
charge for threatening Officer Parson with the firearm.  On
September 7, 2016, the criminal judgment was entered against
Lopes-Salas for his actions during the pursuit on March 23, 2016.

On July 30, 2018, Lopes-Salas died.

Plaintiff Josephine Louis Salas, Lopes-Salas's mother,
brings this action on behalf of Lopes-Salas's estate.  She seeks
damages against Defendant Officer Parson individually, claiming
use of excessive force in violation of the Fourth Amendment of
the United States Constitution.  (42 U.S.C. § 1983).

Defendant Officer Parson filed the Motion for Summary
Judgment before the Court.

First, Officer Parson asserts that the use of force was
reasonable given the deadly threat posed by Lopes-Salas.  Lopes-
Salas was known to Officer Parson, because three months earlier

2

he had arrested Lopes-Salas for a Burglary in the First Degree. On March 23, 2016, Officer Parson was informed that there was probable cause to arrest Lopes-Salas for another charge of Burglary in the First Degree.  Following a pursuit through the Inn where various workers and guests were present, Officer Parson observed Lopes-Salas suddenly raise his arm and point the firearm in the direction of Officer Parson while Lopes-Salas was fleeing arrest for felony burglary.  Given the imminent threat of harm posed by Lopes-Salas, Officer Parson shot Lopes-Salas, injuring him.

<u>Second</u>, Officer Parson believes qualified immunity applies because it was not clearly established that at the time of the shooting that a reasonable officer would know that Officer Parson's conduct would violate the Constitution.

<u>Third</u>, Officer Parson asserts that Plaintiff's Excessive Force claim is barred pursuant to the doctrine set forth in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  The <u>Heck</u> doctrine prevents a civil suit from invalidating a criminal conviction.  Lopes-Salas's no contest plea to Terroristic Threatening in the First Degree for threatening Officer Parson with the firearm bars Plaintiff's claim of the use of excessive force by Officer Parson.

Defendant Tyler Parson's Motion for Summary Judgment (ECF No. 57) is **GRANTED**.

## PROCEDURAL HISTORY

On March 21, 2018, Carlos Lopes-Salas, Jr. filed the Complaint.  (ECF No. 1).

On January 31, 2019, Defendants City and County of Honolulu and Tyler Parson filed a SUGGESTION OF DEATH.  (ECF No. 22).

On March 15, 2019, the Court held a Status Conference to ascertain who would be named as plaintiff in the case as Lopes-Salas had died.  (ECF No. 27).

On April 25, 2019, Defendants City and County of Honolulu and Tyler Parson filed a Status Report.  (ECF No. 28).

On May 1, 2019, Counsel for Lopes-Salas filed a Status Report.  (ECF No. 29).

On June 12, 2019, Counsel for Lopes-Salas filed a Supplemental Status Report.  (ECF No. 31).

On July 24, 2019, the Court issued an ORDER TO SHOW CAUSE WHY THE CASE SHOULD NOT BE DISMISSED.  (ECF No. 32).

On September 12, 2019, Counsel for Lopes-Salas filed its Response and a Request for Leave to File a Motion to Substitute Josephine Louise Salas as Plaintiff.  (ECF No. 33).

On September 30, 2019, Defendants City and County of Honolulu and Tyler Parson filed their Response to the Court's Order to Show Cause.  (ECF No. 34).

On December 30, 2019, the Court issued an ORDER GRANTING JOSEPHINE SALAS'S REQUEST FOR LEAVE TO FILE A MOTION TO SUBSTITUTE AS PLAINTIFF.  (ECF No. 35).

4

On January 27, 2020, Josephine Louise Salas filed a MOTION TO SUBSTITUTE PARTY.  (ECF No. 36).

On January 30, 2020, the Magistrate Judge granted Plaintiff's Motion for Substitution of Party and substituted Josephine Louise Salas, as Personal Representative of the Estate of Carlos Lopes-Salas, Jr., as the Plaintiff.  (ECF No. 39).

On June 1, 2020, Defendant Tyler Parson filed a Motion for Summary Judgment that was withdrawn.  (ECF Nos. 50, 52).

On the same date, Defendant City and County of Honolulu filed a Motion for Summary Judgment, a Joint Concise Statement of Facts, and a Supplemental Joint Concise Statement of Facts.  (ECF Nos. 51, 54, and 55).

Also on June 1, 2020, Defendant Tyler Parson filed a second Motion for Summary Judgment that was withdrawn.  (ECF Nos. 53, 56).

On June 3, 2020, Defendant Tyler Parson filed a Motion for Summary Judgment.  (ECF No. 57).

On the same date, the Defendant City and County of Honolulu filed a Joinder to Defendant Parson's Motion.  (ECF No. 58).

On June 4, 2020, the Court issued a briefing schedule.  (ECF No. 59).

On June 17, 2020, the Court issued a STIPULATION FOR PARTIAL DISMISSAL WITH PREJUDICE; ORDER.  (ECF No. 60).  The Stipulation dismissed the state law tort claims against Defendant Parson.

On June 18, 2020, Plaintiff requested an extension of the briefing schedule, which the Court granted.  (ECF No. 61).

On June 19, 2020, the Court issued a STIPULATION FOR DISMISSAL WITH PREJUDICE OF ALL CLAIMS AGAINST DEFENDANT CITY AND COUNTY OF HONOLULU; ORDER.  (ECF No. 62).

On June 26, 2020, Plaintiff filed its Opposition to Defendant Parson's Motion for Summary Judgment and its Concise Statement of Facts in Opposition.  (ECF Nos. 63, 64).

On July 14, 2020, Defendant Parson filed his Reply and Concise Statement of Facts in Response.  (ECF Nos. 65, 66).

On July 21, 2020, Defendant City and County of Honolulu filed its Withdrawal of its Motion for Summary Judgment due to its dismissal from the case.  (ECF No. 69).

On August 5, 2020, the Court held a hearing on Defendant Tyler Parson's Motion for Summary Judgment via video conference. (ECF No. 70).

On October 14, 2020, the Court issued a Minute Order granting Defendant's Motion for Summary Judgment.  This written order sets forth the basis for the Court's decision.

## BACKGROUND

On March 23, 2016, Defendant Honolulu Police Officer Tyler Parson ("Officer Parson") received a call asking him to assist other officers in the arrest of Carlos Lopes-Salas, Jr. ("Lopes-Salas" or "Carlos").  (Declaration of Defendant Officer Parson ("Parson Decl.") at ¶ 5, attached to Def.'s Joint Concise Statement of Facts ("CSF"), ECF No. 54-1).

Officer Parson was informed that there was probable cause to arrest Lopes-Salas for the offense of Burglary in the First Degree in violation of Hawaii Revised Statutes § 708-810.  (Id.)

Officer Parson was informed that Lopes-Salas was believed to be in the area of the Pacific Marina Inn.  (Id. at ¶ 6).

**The Pacific Marina Inn**

The Pacific Marina Inn ("Inn") consists of three separate buildings that form a U-shape.  (Diagram of Pacific Marina Inn, attached as Ex. 10 at pp. 104-07 to Pla.'s Opp., ECF No. 64).  In the center of the U-shaped building structure is a pool and outdoor lounge area.

There are three main buildings in the U-shaped structure. There are two parallel buildings that form the East Wing and the West Wing of the structure.

The East Wing and West Wing are three-story walk-up buildings that contain hotel rooms that open onto exterior walkways. (Id.; Inn photographs, attached as Ex. 9 at p. 99 to Pla.'s CSF, ECF No. 64).

The East Wing also contains what the pleadings and the Diagram refer to as the "Front Office."  The Front Office functions as the Lobby and Check-In Desk for the Inn.

See Ex. 10 (ECF No. 64) diagram below.

The arrow at the left of the diagram points north.



The building at the top of the U of the diagram runs perpendicular to the East Wing and West Wing buildings.  It contains the Restaurant and Bar.

There is an exterior walkway that separates the Bar in the North Building from the Front Office in the East Wing building. The Front Office walls are made of glass windows and glass doors that allow the Inn employees behind the front desk to see passers-by in the exterior walkway between the Front Office and the Bar.

The Inn's main parking lot is located east adjacent to the East Wing building of the Inn.

**March 23, 2016 Pursuit At The Pacific Marina Inn**

On March 23, 2016, there were Honolulu Police Officers already at the Inn when Officer Parson arrived.  Officer Parson arrived at the Inn a little before 12:00 p.m.  (Parson Decl. at ¶ 7, ECF No. 54-1).  At approximately 12:04 p.m., Officer Parson observed a male that he recognized as Lopes-Salas walking on the exterior walkway of the third floor of the West Wing.  (Id.) Officer Parson was able to recognize Lopes-Salas because he had previously arrested him on a different Burglary in the First Degree charge approximately three months earlier.  (Id. at ¶ 8).

The Honolulu Police Officers, who had arrived before Officer Parson, Greyson Alcosiba, Bryce Hamamoto, and Nathan Nakamura, observed Lopes-Salas walk down the stairs of the West Wing of the Inn. (Arrest Report by Honolulu Police Officer Greyson Alcosiba

at p. 30, attached as Ex. 3 to Pla.'s CSF, ECF No. 64; Arrest Report by Honolulu Police Officer Bryce Hamamoto at pp. 41-42, attached as Ex. 5 to Pla.'s CSF, ECF No. 64; Camera 4 Video at 12:05:50-57, attached as Ex. B to Def.'s CSF, ECF No. 54-6). Lopes-Salas then walked toward the car located south of the Inn in the diagram.  (Diagram of Pacific Marina Inn, attached as Ex. 10 at pp. 104-07 to Pla.'s Opp., ECF No. 64).  The Officers believed the car that Lopes-Salas was walking toward was Lopes-Salas's car.  (Arrest Report by Honolulu Police Officer Greyson Alcosiba at p. 30, attached as Ex. 3 to Pla.'s CSF, ECF No. 64).

Officers Hamamoto and Alcosiba identified themselves as police officers to Lopes-Salas.  Lopes-Salas then immediately ran away from the officers, toward the pool area in the center of the U-shape of the Inn's buildings.  (Id.; Arrest Report by Honolulu Police Officer Bryce Hamamoto at pp. 41-42, attached as Ex. 5 to Pla.'s CSF, ECF No. 64).

Officer Parson was informed over the police radio that Lopes-Salas ran away from other Honolulu Police Officers, and that Lopes-Salas was headed in the direction of the pool area in the center of the Inn.  (Parson Decl. at ¶ 9, ECF No. 54-1). Officer Parson ran toward the pool area and observed Lopes-Salas running directly toward him "at a full sprint."  (Id. at ¶ 10).

Officer Parson yelled to Lopes-Salas, "Police, stop running, you're under arrest."  (Id. at ¶ 11).  Officer Parson was in plain clothes but had his Honolulu Police Department badge and

identification displayed.  They hung from a lanyard around his neck.  (Id.)

Lopes-Salas looked directly at Officer Parson.  (Id. at ¶ 12).  He appeared to recognized Officer Parson.  (Id.)  Lopes-Salas then jumped over a fence, and through bushes, that bordered the pool area.  (Id.)  He continued running.  (Id.)  Officer Parson ran to the opposite side of the pool area in an attempt to cut off Lopes-Salas.  (Id. at ¶ 13).  Officer Parson was less than ten feet away from Lopes-Salas when Officer Parson yelled for Lopes-Salas to "stop running," and that he was "under arrest for Burglary."  (Id.)  Lopes-Salas immediately changed directions and ran beside the pool.  (Id. at ¶ 14).  He continued through the center of the Inn grounds and attempted to jump over the south perimeter wall but fell down.  (Id.)

**Lopes-Salas Drew A Firearm**

Officer Hamamoto observed Lopes-Salas draw a black handgun from his waistband.  (Arrest Report by Honolulu Police Officer Bryce Hamamoto at pp. 41-42, attached as Ex. 5 to Pla.'s CSF, ECF No. 64).  Officer Hamamoto yelled, "Gun."  (Id.)  Officer Parson observed that Lopes-Salas was now holding a 9mm semi-automatic pistol in his right hand.  (Parson Decl. at ¶ 14, ECF No. 54-1).  Once Officer Parson observed that Lopes-Salas was armed, Officer Parson drew his firearm.  (Parson Decl. at ¶ 15, ECF No. 54-1).  Officer Parson then shouted "Police, Carlos, drop the gun."  (Id.)  Lopes-Salas did not comply but ran east past the pool

toward the main parking lot on the end of the Inn's East Wing building.  (<u>Id.</u> at ¶ 16).

## The Inn's Surveillance Videos From March 23, 2016

There is footage from four separate cameras recording the pursuit of Lopes-Salas on March 23, 2016 at the Inn.

<u>Exhibit B: Video From Camera 4</u> overlooked the south portion of the East Wing and West Wing buildings of the Inn.

<u>Exhibit A: Video From Camera 2</u> overlooked the parking lot located on the east side of the East Wing building.

<u>Exhibit C: Video From Camera 6</u> overlooked the Front Office located in the north part of the East Wing building.  The camera was positioned over the Front Office desk and faced toward the hallway between the Front Office and the Bar located in the North Building.

<u>Exhibit D: Video From Camera 13</u> overlooked the Bar located in the North Building.  The camera was positioned over the bar and faced toward the hallway between the Bar and the Front Office.

### Exhibit B: Video Footage From Camera 4

Camera 4 overlooked the south portion of the Inn.  Lopes-Salas is clearly visible in the surveillance footage fleeing from Officer Parson and running from the pool area located in the center of the U-shape of the buildings.  (Camera 4 Video at 12:07:22-28, attached as Ex. B to Def.'s CSF, ECF No. 54-6).

Lopes-Salas is seen running south and turning around the corner of the East Wing of the Inn as he is followed by Officer Parson and then by Officers Alcosiba, Hamamoto, and Nakamura in the video. (Id.)  Inn bystanders can be observed on the video as the Officers chased Lopes-Salas.  (Id. at 12:07:29-32).

### Exhibit A: Video Footage From Camera 2

Camera 2 overlooked the Inn's parking lot located on the east side of the East Wing.  The surveillance footage from Camera 2 shows a female employee of the Inn watering trees and potted plants in the main parking lot adjacent to the Inn.  (Camera 2 Video at 12:06:53-12:07:25, attached as Ex. A to Def.'s CSF, ECF No. 54-4).  When Lopes-Salas turned the corner from the view of Camera 4 to run down the far east side of the Inn through the parking lot, Camera 2's surveillance footage shows Lopes-Salas run past the Inn employee, while carrying the firearm.  As he ran, gun in hand, he passed over the hose the employee was using for watering.  (Id. at 12:07:25-33).

Officer Parson chased Lopes-Salas north the entire length of the East Wing through the Inn's main parking lot.  (Id.; Arrest Report by Honolulu Police officer Nathan Nakamura at pp. 48-49, attached as Ex. 6 to Pla.'s CSF, ECF No. 64).  Officer Parson heard Lopes-Salas shout, "I sorry, I sorry, I'm not going back." (Parson Decl. at ¶¶ 17-18, ECF No. 54-1).

Officer Parson was aware from his prior arrest of Lopes-Salas for Burglary that Lopes-Salas also had pending cases for

felony assaults.  (Id. at ¶ 18).  Officer Parson knew there was probable cause to arrest Lopes-Salas for the new Burglary in the First Degree charge.  (Id. at ¶ 5).  Officer Parson believed that Lopes-Salas's statement that he was "not going back" was referencing incarceration for the pending cases as well as the new charge for which Officer Parson was pursuing Lopes-Salas. (Id. at ¶ 18).

Arriving on the scene, Honolulu Police Officer William Makaneole headed toward the Inn from the eastside, just outside of view of Camera 2.  He observed Lopes-Salas being chased by Officer Parson, and Officers Hamamoto, Alcosiba, and Nakamura along the East Wing in the Inn's main parking lot.  (Declaration of Honolulu Police Officer William Makaneole ("Makaneole Dec.") at ¶¶ 4-8, attached to Def.'s CSF, ECF No. 54-2; Camera 2 Video at 12:07:25-33, attached as Ex. A to Def.'s CSF, ECF No. 54-4).

Officer Makaneole heard Officer Parson yell to Lopes-Salas, "Drop the gun!"  (Makaneole Decl. at ¶ 9, ECF No. 54-2).  Lopes-Salas did not comply with Officer Parson's instruction.  (Id.) Officer Makaneole then yelled at Lopes-Salas to, "Drop the gun!" (Id. at ¶ 10).

Officer Makaneole observed that Lopes-Salas was running directly toward him while holding the firearm in his right hand. (Id.)  The video from Camera 2 clearly shows the firearm in Lopes-Salas's right hand as he ran toward Officer Makaneole. (Camera 2 at 12:07:34-35, attached as Ex. A to Def.'s CSF, ECF No. 54-4).  Officer Makaneole drew his firearm and pointed it at

14

Lopes-Salas.  (Camera 2 Video at 12:07:31-38, attached as Ex. A to Def.'s CSF, ECF No. 54-4).  Lopes-Salas continued to run toward him.  (Id.)

The video reflects Lopes-Salas continued running with the firearm in his hand in an attempt to flee the Officers pursuing him.  (Id. at 12:07:31-38).

Officer Makaneole observed that both Officer Parson and the Inn employee watering the plants were in his line of fire if he fired at Lopes-Salas as Lopes-Salas ran toward him.  (CID Closing Report at p. 72, attached as Ex. 8 to Pla.'s CSF, ECF No. 64; Makaneole Decl. at ¶ 13, ECF No. 54-2; Camera 2 at 12:07:33-38).  Officer Makaneole holstered his weapon because he feared for the safety of Officer Parson and the Inn employee if he shot at Lopes-Salas.  (Makaneole Decl. at ¶ 12, ECF No. 54-2).

After holstering his firearm, Officer Makaneole tried to physically intercept Lopes-Salas.  (Id.; Camera 2 Video at 12:07:35-38, attached as Ex. A to Def.'s CSF, ECF No. 54-4).  Officer Makaneole grabbed for Lopes-Salas's right arm and tried to shove him toward a wall to stop him.  (Makaneole Decl. at ¶ 12, ECF No. 54-2).  Officer Makaneole collided with Lopes-Salas, but Lopes-Salas maneuvered past Officer Makaneole, and Lopes-Salas turned and ran toward the Inn's Front Office located in the East Wing building.  (Id. at ¶ 13; Parson Decl. at ¶ 19, ECF No. 54-1).

In the video from Camera 2, an Inn guest can be seen on the second floor exterior walkway and other bystanders are visible in

15

the video a few seconds after Lopes-Salas ran out of view of the camera while running with the firearm in his hand.  (Camera 2 Video at 12:07:38-12:08:58, attached as Ex. A to Def.'s CSF, ECF No. 54-4).

Officer Parson, followed by the other three Officers, continued to chase Lopes-Salas as he turned the corner past Officer Makaneole.  (Id. at 12:07:38).  Officer Parson observed that Lopes-Salas was holding the firearm by its handle in his right hand.  (Parson Decl. at ¶ 20, ECF No. 54-1).  Officer Parson recognized the gun to be a real Glock pistol.  (Id.)  As he chased him, Officer Parson got within four feet of Lopes-Salas and again yelled for him to "Drop the gun."  (Id. at ¶ 22).

### Exhibit C: Video Footage From Camera 6

Camera 6 was positioned in the Front Office over the desk and facing the hallway between it and the Bar in the North Building.  The video from Camera 6 shows an Inn employee behind the front desk in the lobby of the Front Office.  The Front Office walls consist of glass windows and glass doors that allowed the staff to see guests walking in the exterior walkway between the Front Office and the Bar.  In the video, Lopes-Salas and Officer Parsons are visible as Lopes-Salas ran down the hallway between the Front Office and the Bar. (Camera 6 Video at 12:07:35-39, attached as Ex. C to Def.'s CSF, ECF No. 54-8).  An employee is visible in the video in the Front Office, behind the front desk in the lobby area, approximately 20 feet from Lopes-

Salas and Officer Parson and separated by glass walls.  Due to
the camera's angle, only the lower portion of Lopes-Salas and
Officer Parson can be observed.  Lopes-Salas was armed with the
gun as he ran, approximately 20 feet away from the front desk
worker.  (<u>Id.</u>)

### <u>Exhibit D: Video Footage From Camera 13</u>

Camera 13 was placed overlooking the Bar in the North
Building and facing toward the exterior walkway between it and
the Front Office.  The Bar had glass windows that overlooked the
exterior walkway between the Bar and the Front Office.  Due to
the camera's angle and the location of the windows, only a small,
upper portion of Lopes-Salas and Officer Parson can be observed.
(Camera 13 Video at 12:07:38-39, attached as Ex. D to Def.'s CSF,
ECF No. 54-10).  The firearm appears in Lopes-Salas's right hand
above his shoulder in the video from Camera 13.  (<u>Id.</u>)  No one
was present in the Bar at the time of the pursuit.

**Office Parson Observed Lopes-Salas Change His Position With The
Firearm**

As Lopes-Salas turned to enter the exterior walkway between
the Front Office and the Bar, both Officer Makaneole and Officer
Parson saw Lopes-Salas's position change with respect to his
firearm.  (Parson Decl. at ¶¶ 24-25, ECF No. 54-1; Makaneole
Decl. at ¶ 17, ECF No. 54-2).  Lopes-Salas suddenly bent his
right elbow, and he raised the gun that he was holding in his

right hand by the handle up toward his shoulder.  (Parson Decl. at ¶ 24, ECF No. 54-1; Makaneole Decl. at ¶ 17, ECF No. 54-2).

Officer Parson observed the barrel of Lopes-Salas's firearm to have been moved to now be pointed upward and tilted backward around his shoulder toward Officer Parson.  (Parson Decl. at ¶ 25, ECF No. 54-1).  Officer Parson saw Lopes-Salas's grip on the gun tighten and states that it appeared that Lopes-Salas's finger was on the trigger.  (Id. at ¶ 26).  Officer Parson believed that Lopes-Salas was about to shoot him.  (Id. at ¶ 27).  Officer Parson thought Lopes-Salas would use the firearm in order to evade arrest.  (Id.)  Officer Parson perceived an immediate threat to himself.  (Id.)  Officer Parson also perceived a threat to the safety of the other Officers in pursuit and to bystanders. (Id. at ¶¶ 27-28).

Approximately one to two seconds after Officer Parson perceived Lopes-Salas's position change with respect to raising the firearm and pointing the barrel in his direction, Officer Parson stopped running.  (Id. at ¶¶ 29-30).  Officer Parson planted his feet to steady his aim, and he fired two shots at Lopes-Salas's center mass.  (Id.; Makaneole Decl. at ¶ 20, ECF No. 54-2).

There is not a clear image of the shooting from the surveillance footage in either Camera 6 or Camera 13.

One bullet struck Lopes-Salas in the back.  (Parson Decl. at ¶ 31, ECF No. 54-1; Makaneole Decl. at ¶¶ 17-21, ECF No. 54-2). He fell forward in the exterior walkway that separates the Front

Office from the Bar. (Id.) Lopes-Salas's firearm flew out of his hand and landed on the floor. (Parson Decl. at ¶ 32, ECF No. 54-1). Lopes-Salas's firearm was fully loaded with a magazine of 14 bullets. (Affidavit for Arrest at ¶ 19, p. 22, ECF No. 64). Checks through the Honolulu Police Department Dispatch revealed that the firearm was stolen in a burglary on March 19, 2016. (Arrest Report by Honolulu Police Officer Greyson Alcosiba at p. 32, attached as Ex. 3 to Pla.'s CSF, ECF No. 64).

Lopes-Salas was treated on the scene and transported to Queen's Medical Center. (CID Closing Report at p. 72, attached as Ex. 8 to Pla.'s CSF, ECF No. 64).

**Lopes-Salas's Arrest And Convictions For Terroristic Threatening In The First Degree And Firearms Charges**

On March 28, 2016, Lopes-Salas was charged with:

(1)   Terroristic Threatening in the Fist Degree in violation of Haw. Rev. Stat. § 707-716(1)(e);

(2)   Place to Keep Pistol of Revolver in violation of Haw. Rev. Stat. § 134-25;

(3)   Felon in Possession of a Firearm in violation of Haw Rev. Stat. § 134-7(h); and,

(4)   Possession of Prohibited Detachable Ammunition Magazine in violation of Haw. Rev. Stat. § 134-8(c).

(Affidavit In Support of Warrant of Arrest at pp. 18-26, attached as Ex. 2 to Pla.'s CSF, ECF No. 64).

On April 4, 2016, a Terroristic Threatening charge was filed against Lopes-Salas in the Circuit Court of the First Circuit, State of Hawaii. It charged as follows:

On or about March 23, 2016, in the City and County of Honolulu, State of Hawaii, Carlos Lopes-Salas, Jr. threatened, by word or conduct, to cause bodily injury to Tyler Parson, with the use of a dangerous instrument, to wit, a semiautomatic firearm as defined in Section 706-660.1 of the Hawaii Revised Statutes, with the intent to terrorize, or in the reckless disregard of terrorizing Tyler Parson, thereby committing the offense of Terroristic Threatening in the First Degree, in violation of Section 707-716(1)(e) of the Hawaii Revised Statutes.

(Complaint, dated April 4, 2016, Cr. No. 16-1-0496, Circuit Court of the First Circuit, State of Hawaii, attached as Ex. E to Def.'s CSF, ECF No. 55-3).

On June 24, 2016, Lopes-Salas pled no contest to Terroristic Threatening in the First Degree in violation of Haw. Rev. Stat. § 707-716(1)(e) as charged in the Complaint in Cr. No. 16-1-0496, and the other three charges.  (No Contest Plea, dated June 24, 2016, Cr. No. 16-1-0496, Circuit Court of the First Circuit, State of Hawaii, attached as Ex. F to Def.'s CSF, ECF No. 55-5).[1]

On September 7, 2016, Lopes-Salas was sentenced to 5 years incarceration for Terroristic Threatening in the First Degree and the Judgment of Conviction was entered against him. (Docket Entry dated September 7, 2016, Cr. No. 16-1-0496, Circuit Court

---

[1] In addition to Terroristic Threatening In The First Degree, Lopes-Salas also pled no contest to charges for the other three charges:
  (1)   Place to Keep Pistol of Revolver in violation of Haw. Rev. Stat. § 134-25;
  (2)   Felon in Possession of a Firearm in violation of Haw Rev. Stat. § 134-7(h); and,
  (3)   Possession of Prohibited Detachable Ammunition Magazine in violation of Haw. Rev. Stat. § 134-8(c).

of the First Circuit, State of Hawaii, attached as Ex. G to Def.'s CSF, ECF No. 55-7).

Almost two years later, on July 30, 2018, Lopes-Salas died. (Certificate of Death, No. 151 2018-006813, at p. 130, attached as Ex. 12 to Pla.'s CSF, ECF No. 64).

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial.  The moving party need not produce any evidence at all on matters for which it does not have the burden of proof.  Celotex, 477 U.S. at 325.  The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of

law.  That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case.  Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979).  The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party.  State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).  Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the movant's evidence at trial.  Fed. R. Civ. P. 56(e); T.W. Elec. Serv., 809 F.2d at 630.  The opposing party cannot rest on mere allegations or denials.  Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994).  When the non-moving party relies only on its own

affidavits to oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data to create an issue of material fact. <u>Hansen v. United States</u>, 7 F.3d 137, 138 (9th Cir. 1993); <u>see also</u> <u>National Steel Corp. v. Golden Eagle Ins. Co.</u>, 121 F.3d 496, 502 (9th Cir. 1997).

## <u>ANALYSIS</u>

**I.   Plaintiff's Claim Pursuant to 42 U.S.C. § 1983 Against Defendant Officer Tyler Parson For Excessive Force In Violation Of The Fourth Amendment To The United States Constitution**

The only claim remaining in this case is against Defendant Tyler Parson in his individual capacity for excessive force in violation of the Fourth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983.[2]

Title 42 U.S.C. § 1983 provides a cause of action for deprivation of "rights, privileges, or immunities secured by the Constitution or laws of the United States" by persons acting "under color of any statute, ordinance, regulation, custom, or usage." <u>Gomez v. Toledo</u>, 446 U.S. 635, 638 (1980).  To prevail on a Section 1983 claim, a plaintiff must prove that a right secured by the Constitution or laws of the United States was violated and that the violation was committed by a person acting

---

[2] Count 2 as stated against Defendant City and County of Honolulu was dismissed pursuant to the Parties' June 19, 2020 Stipulation for Dismissal With Prejudice.  (ECF No. 62).   Counts 3 and 4 as stated against Defendant Parson were dismissed pursuant to the Parties' June 17, 2020 Stipulation for Partial Dismissal With Prejudice.  (ECF No. 60).

under the color of state law.  Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Plaintiff Josephine Louis Salas, on behalf of Carlos Lopes-Salas, Jr. ("Lopes Salas" or "Carlos"), asserts that Defendant Honolulu Police Officer Tyler Parson used excessive force in the course of Lopes-Salas's arrest on March 23, 2016.

It is undisputed that Officer Parson acted under color of state law when he acted to seize and arrest Lopes-Salas.

The use of force in the course of an arrest is analyzed pursuant to the Fourth Amendment of the United States and its reasonableness standard.  Graham v. Connor, 490 U.S. 386, 397 (1989).  The reasonableness inquiry is an objective one: the question is if the officer's actions are objectively reasonable in light of the facts and circumstances confronting him.  See id. The essence of the reasonableness inquiry is a balancing of the force which was applied against the need for that force.  Liston v. Cnty. of Riverside, 120 F.3d 965, 976 (9th Cir. 1997).

Determining whether the force used to effect a particular seizure is reasonable pursuant to the Fourth Amendment requires a careful balancing of the "nature and quality of the intrusion on the individual's Fourth Amendment interests" against the countervailing governmental interests at stake.  Graham, 490 U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 7-8 (1985)).

## A.   Nature and Quality of the Intrusion

The gravity of the particular intrusion that a given use of force imposes upon an individual's liberty interest is measured by the type and amount of force inflicted.  Jackson v. City of Bremerton, 268 F.3d 646, 651-52 (9th Cir. 2001) (citing Chew v. Gates, 27 F.3d 1432, 1440 (9th Cir. 1994)).

In this case, it is undisputed that on March 23, 2016, Honolulu Police Officer Tyler Parson seized and arrested Lopes-Salas.  During the course of the seizure and arrest, Officer Parson fired two rounds aimed at Lopes-Salas, striking him once in the lower back.  (Parson Decl. at ¶¶ 27-40, ECF No. 54-1).

Shooting an individual with a firearm constitutes a use of deadly force.  Blandford v. Sacramento Cnty., 406 F.3d 1110, 1117-19 (9th Cir. 2005).  The use of deadly force implicates the highest level of Fourth Amendment scrutiny.  A.K.H. by & through Landeros v. City of Tustin, 837 F.3d 1005, 1011 (9th Cir. 2016).

## B.   Governmental Interest

The use of deadly force must be balanced against the need for the use of such force.  Isayeva v. Sacramento Sheriff's Dep't, 872 F.3d 938, 946-47 (9th Cir. 2017).  Courts examine three main factors when evaluating the governmental interest in the use of force:

    (1)  the severity of the crime at issue;

    (2)  the suspect's level of resistance to detention or attempts to escape; and,

     (3)   the level of immediate threat to the safety of the
           officers or others posed by the suspect.

     Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011) (en

banc).  In addition to the three main factors, courts must

examine the totality of the circumstances and whatever specific

factors may be appropriate in a particular case.  Franklin v.

Foxworth, 31 F.3d 873, 876 (9th Cir. 1994).

### (1)  Severity of the Crime At Issue

     The Ninth Circuit Court of Appeals has explained that the

Government's interest in apprehending criminals, and particularly

felons, is a factor that strongly favors the use of force.

Miller v. Clark Cnty., 340 F.3d 959, 964 (9th Cir. 2003).

     The use of force analysis takes into account the facts known

to the police at the time of the arrest with respect to the

alleged offense that triggered the arrest.  Velazquez v. City of

Long Beach, 793 F.3d 1010, 1026 (9th Cir. 2015).

     Here, it is undisputed that Lopes-Salas was being pursued by

Officer Parson for the offense of Burglary in the First Degree in

violation of Haw. Rev. Stat. § 708-810, which is a class B felony

punishable by up to ten years in prison.

     Officer Parson had previously arrested Lopes-Salas on a

different Burglary in the First Degree charge approximately three

months earlier.  (Parson Decl. at ¶ 8, ECF No. 54-1).  Officer

Parson was also aware from Lopes-Salas's prior arrest that he had

pending cases for felony assaults.  (Id. at ¶ 18).

The Ninth Circuit Court of Appeals has recognized that burglary is a dangerous, serious crime that supports the Government's need for the use of force.  Lowry v. City of San Diego, 858 F.3d 1248, 1257-58 (9th Cir. 2017).

### (2)  Resistance or Attempt to Escape

The second factor analyzes if the suspect was "actively resisting arrest or attempting to evade arrest by flight, and any other exigent circumstances that existed at the time of the arrest."  Mattos, 661 F.3d at 445 (quoting Deorle v. Rutherford, 272 F.3d 1272, 1280 (9th Cir. 2001)).

There is no dispute that Lopes-Salas was actively resisting arrest and attempting to evade arrest.  Lopes-Salas was confronted by the Honolulu Police Officers and ran from them. Lopes-Salas ignored the Officers' commands to "stop, you're under arrest."  Lopes-Salas ran through public spaces, jumped through bushes, over fences, and past bystanders, in an attempt to evade arrest.  During Lopes-Salas's flight from arrest, he drew a loaded 9mm semi-automatic pistol and ran with it in his hand while trying to evade the Officers.  (Parsons Decl. at ¶¶ 14, 20, 44, ECF No. 54-1).  Lopes-Salas yelled at the Officers that he was "not going back."  (Id. at ¶ 18).

Fleeing from the police and disobeying commands constitutes resisting arrest for purposes of the Graham analysis and favors the Government's use of force.  Mattos, 661 F.3d at 445 (citing Chew, 27 F.3d at 1442).

### (3)   Immediate Threat to the Safety of the Officers and Others

The most important factor concerning the governmental interest is whether the suspect posed an "immediate threat to the safety of the officers or others." Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005).  A statement by an officer that he subjectively feared for his safety or the safety of others is insufficient.  There must be objective factors to justify such a concern.  Mattos, 661 F.3d at 441-42 (citing Deorle, 272 F.3d at 1281).

Here, there are numerous objective factors to justify Officer Parson's concern for the safety of himself, the other Officers, Inn employees, and the bystanders.

First, Plaintiff claims that the Inn was not busy and there were no bystanders for whom the Officers should have been concerned.  This is directly contradicted by the video evidence.  Numerous bystanders are shown in and around the Inn's grounds. (Camera 2 Video at 12:07:38-12:08:31, attached as Ex. A to Def.'s CSF, ECF No. 54-4; Camera 4 at 12:05:42-12:07:29, attached as Ex. B to Def.'s CSF, ECF No. 54-6; Camera 6 Video at 12:07:23-39, attached as Ex. C to Def.'s CSF, ECF No. 54-8).  Camera 2's video in Exhibit A conclusively demonstrates that Lopes-Salas ran directly in front of one Inn employee, while carrying a loaded semiautomatic 9mm firearm, as she watered plants in the east parking lot.  (Camera 2 Video at 12:07:25-12:08:38, attached as Ex. A to Def.'s CSF, ECF No. 54-4).  Camera 6's video at Exhibit

C shows another Inn employee behind the front desk in the lobby area of the Front Office.  The employee was within approximately 20 feet of the shooting when it occurred and separated from Lopes-Salas by a glass window.  (Camera 6 Video at 12:07:23-39, attached as Ex. C to Def.'s CSF, ECF No. 54-8).

Video evidence of an incident giving rise to an excessive force claim must be viewed in the light depicted by the videotape.  Scott v. Harris, 550 U.S. 372, 380-81 (2007).  A plaintiff may not interpret the video in a way that creates "such visible fiction" that is "discredited by the record."  Id.  While the record is viewed in a light most favorable to the non-moving party, a plaintiff cannot rely on a version of facts that is contradicted by video evidence.  Vos v. City of Newport Beach, 892 F.3d 1024, 1028 (9th Cir. 2018).

Second, there can be no dispute that Lopes-Salas was fleeing from arrest when he was chased by the Officers who announced to Lopes-Salas that they were Honolulu Police Officers and that he was under arrest.  (Parson Decl. at ¶¶ 5-6, ECF No. 54-1).

Third, there is no dispute that Lopes-Salas held a loaded 9mm semi-automatic pistol in his hand while he ran through the Inn, fleeing the attempt to arrest him.  (Id. at ¶¶ 14, 20, 44; Camera 2 Video at 12:07:35, attached as Ex. A to Def.'s CSF, ECF No. 54-4).

The objective factors support Defendant Parson's observations of Lopes-Salas's actions with the firearm.  According to Defendant Parson, he observed Lopes-Salas's grip on

the gun tighten and his finger on the trigger.  (Parson Decl. at ¶¶ 25-26, ECF No. 54-1).  Officer Parson noticed the barrel starting to point backward in his direction while Lopes-Salas was running away from him.  (Id.; Parson Police Report dated March 23, 2016, at pp. 36-39, attached as Ex. 4 to Pla.'s CSF, ECF No. 64).  Officer Parson then stopped running, planted his feet to steady his aim, and discharged two bullets at Lopes-Salas's center mass.  (Parson Decl. at ¶¶ 27-30, 35, 40, ECF No. 54-1).  Lopes-Salas was struck in the back by one bullet.  (Id. at ¶ 31).

Plaintiff has not presented any evidence to dispute the objective evidence of what happened at the scene on March 23, 2016.  Plaintiff agrees that Lopes-Salas was attempting to flee from the Officers to avoid arrest for Burglary in the First Degree.  Plaintiff agrees that Officer Parson had arrested Lopes-Salas three months earlier for Burglary in the First Degree and that Lopes-Salas had pending felony assault charges.  Plaintiff agrees that Lopes-Salas held a loaded 9mm semi-automatic Glock pistol in his right hand when he was running from Officers through the public spaces in the Inn.  Plaintiff agrees that Lopes-Salas did not follow the Officers' commands to stop and to drop the gun.  Plaintiff agrees that Lopes-Salas attempted to flee from the Officers, even when confronted by Officer Makaneole who had a gun pointed at Lopes-Salas.  Plaintiff agrees that Lopes-Salas ran toward Officer Makaneole with a firearm in his own hand.  Plaintiff agrees that Officer Makaneole attempted to

make physical contact with Lopes-Salas to stop him but Officer Makaneole was unable to do so.

Plaintiff does not dispute that as Officer Parson came within four feet of Lopes-Salas, Lopes-Salas suddenly raised his right hand holding the firearm.  Plaintiff does not dispute that within seconds of Lopes-Salas raising his firearm, Officer Parson discharged his weapon at Lopes-Salas.

Plaintiff's argument is that Lopes-Salas did not specifically point the barrel of the pistol toward Officer Parson.  Plaintiff also argues that there was no evidence that Lopes-Salas placed his finger on the trigger of the firearm. Plaintiff does not cite any evidence to support these claims. Plaintiff cites to the videos from Cameras 6 and 13, at Exhibits C and D, attached to Defendant's Concise Statement of Facts.  The videos at Exhibits A, B, C, and D, support Officer Parson's perception of the immediate threat posed by Lopes-Salas and the objective factors that support Officer Parson's observations. All of the evidence presented conclusively demonstrates that Lopes-Salas posed a threat to Officer Parson, the other Officers, and bystanders at the scene.  A reasonable officer in Officer Parson's position would perceive an imminent fear of harm to himself or others.

The Court is cognizant that the Ninth Circuit Court of Appeals has explained that, in cases where officers are involved in deadly incidents, and the officers and the decedent are the only witnesses, courts must carefully examine all the evidence in

the record.  Cruz v. City of Anaheim, 765 F.3d 1076, 1079 (9th Cir. 2014).  It is necessary to determine if the officers' stories are internally consistent and consistent with other known facts.  Id.

Here, the Officers' statements and the police reports are consistent.  Plaintiff has not pointed to any disputes of fact within the evidence in the record.  Plaintiff cannot create a dispute of material fact without any evidence that actually creates a dispute.  Cooper v. United Air Lines, Inc., 82 F.Supp.3d 1084, 1104 (N.D. Cal. 2015) (citing F.T.C. Publ'g Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997), as amended (9th Cir. Apr. 11, 1997)).

Both the Declaration of Officer Parson and the Police Report state that Lopes-Salas suddenly raised the gun with his right hand and pointed in Officer Parson's direction.  (Parson Decl. at ¶ 25, ECF No. 54-1; Parson Police Report dated March 23, 2016 at p. 37, attached as Ex. 4 to Pla.'s CSF, ECF No. 64).  Officer Parson's undisputed statement is consistent with the accounts of the other Officers on the scene and the surveillance videos recorded by the Inn.  (Makaneole Decl. at ¶ 17-19, ECF No. 54-2; Videos attached as Exs. A-D to Def.'s CSF, ECF Nos. 54-4, 54-6, 54-8, 54-10).

Deadly force is justified when a suspect threatens an officer with a weapon.  Smith, 394 F.3d at 704.  The fact that a suspect is armed with a weapon, however, does not render the officers' response per se reasonable.  Glenn v. Washington Cnty.,

673 F.3d 864, 872-73 (9th Cir. 2011).  There must be an immediate threat to the safety of the officer or to others such as pointing a gun at in the direction of officers.  George v. Morris, 736 F.3d 829, 838 (9th Cir. 2013); Long v. City and Cnty. Of Honolulu, 511 F.3d 901, 906 (9th Cir. 2007); Scott v. Henrich, 39 F.3d 912, 914-15 (9th Cir. 1994).

Here, the totality of the undisputed facts demonstrate that Lopes-Salas posed an immediate threat to the safety of the officers and others at the time of the shooting.  The Officers had attempted to employ lesser levels of force without success.  Glenn, 673 F.3d at 876.  The Officers identified themselves as police officers and Lopes-Salas ignored their commands to stop and to drop his firearm.  Deorle, 272 F.3d at 1283-84; Wilkinson v. Torres, 610 F.3d 546, 551 (9th Cir. 2010) (holding that officer's shooting of plaintiff did not violate a constitutional right where plaintiff had ignored officer commands and was accelerating towards the officer on foot).

Officer Parson discharged his weapon within seconds of perceiving Lopes-Salas suddenly change positions and raising his firearm up to his shoulder and pointing it in Officer Parson's direction.  Officer Parson was required to make a split-second judgment in circumstances that were rapidly evolving.  Graham, 490 U.S. at 397.  The use of force by Officer Parson to shoot twice at Lopes-Salas in response to Lopes-Salas's sudden movement was reasonable.  Plumhoff v. Rickard, 572 U.S. 765, 777-78 (2014) (finding the officers used reasonable force by shooting the

suspect multiple times in order to detain him and prevent the threat of immediate harm to the officers and bystanders).

## II.  QUALIFIED IMMUNITY

Qualified immunity attaches when an officer's conduct does not violate clearly established constitutional rights of which a reasonable person would have known.  Kisela v. Hughes, 138 S.Ct. 1148, 1152 (2018) (citing White v. Pauly, 137 S.Ct. 548, 551 (2017) (per curiam)).  Clearly established law exists when the contours of a right are sufficiently clear that every reasonable officer would have understood that what he is doing violates that right.  Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

The determination whether a right was clearly established must be undertaken in light of the specific context of the case, not as a broad general proposition.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  The precedent establishing this right must place the question beyond debate.  al-Kidd, 563 U.S. at 741.  The inquiry is case specific but it is not so narrowly defined to preclude any potential claims without identical fact patterns.  Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).

Generally, courts follow a two-step inquiry in determining if a government official is entitled to qualified immunity.

First, a court must decide whether the facts that a plaintiff has demonstrated make out a violation of a constitutional right.  Pearson, 555 U.S. at 232.

Second, the court must decide if the right at issue was clearly established at the time of defendant's conduct.  Id.

The Court has already analyzed Officer Parson's use of force and found that it was reasonable under the totality of the circumstances.  Even if it was not reasonable, Officer Parson is entitled to qualified immunity because it was not clearly established on March 23, 2016, that Officer Parson was not allowed to use deadly force considering all the undisputed facts and the totality of the circumstances.

The United States Supreme Court recently explained that "specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."  Kisela, 138 S.Ct. at 1152-54. Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and police officers are entitled to qualified immunity unless existing precedent "squarely governs" the specific facts at issue.  Id.

Plaintiff relies on George v. Morris, 736 F.3d 829, 839 (9th Cir. 2013) and Curnow By and Through Curnow v. Ridgecrest Police, 952 F.2d 321, 325 (9th Cir. 1991) neither of which "squarely govern" the specific facts of this case.  George involved officers shooting an armed homeowner who was using a walker on his own patio.  736 F.3d at 832-33.  Curnow involved officers breaking down the door of the suspect's residence and immediately

shooting him.  952 F.2d at 323.  Neither case involves a foot chase of an armed suspect.  Neither case involves an armed suspect, in a public space with numerous bystanders, who made a sudden objectively threatening movement with the firearm.

In the Fourth Amendment excessive force context, specificity is especially important.  Mullenix v. Luna, 136 S.Ct. 305, 308 (2015).  Police Officers are entitled to qualified immunity in excessive force cases unless existing precedent squarely governs the specific facts at issue.  Ventura v. Rutledge,    F.3d   , 2020 WL 6192981, *2-*3 (9th Cir. 2020) (citing Kisela, 138 S.Ct. at 1153).  Plaintiff has failed to point to existing precedent that would have alerted Officer Parson that the use of deadly force was unlawful given the specific facts in this case.  Shafer v. Cnty of Santa Barbara, 868 F.3d 1110, 1118 (9th Cir. 2017) (holding that the officer was entitled to qualified immunity because plaintiff failed to identify sufficiently specific constitutional precedents to alert the officer that his conduct was unlawful).

There was no case as of March 23, 2016, that would have informed a reasonable officer that the conduct of Officer Parson would violate the law.  At that time, it was clearly established that the use of deadly force was reasonable when the officer perceived an imminent threat of harm by an armed suspect.  Long, 511 F.3d at 906; see also Easely v. City of Riverside, 765 Fed. Appx. 282, 290 (9th Cir. April 3, 2019) (J. Bennett, dissenting) (explaining that the officer was entitled to qualified immunity

where he perceived an imminent threat from an armed suspect who made a sudden arm movement across his body).

Officer Parson is entitled to qualified immunity. <u>Kisela</u>, 138 S.Ct. at 1154-55; <u>Ventura</u>, 2020 WL 6192981 at *3.

## III.  <u>HECK</u> DOCTRINE

Defendant Tyler Parson moves for summary judgment on Plaintiff's Section 1983 Excessive Force claim on the basis of <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  The United States Supreme Court's decision in <u>Heck</u> precludes a plaintiff from prevailing in a civil action for damages based on the same conduct that would necessarily render a final criminal conviction or sentence invalid.  512 U.S. at 486-87.

The United States Supreme Court explained:

> [I]n order to recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

<u>Heck</u>, 512 U.S. at 486-97.  "<u>Heck</u>, in other words, says that if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which § 1983 damages are sought, the 1983 action must be dismissed."  <u>Rosales v. City of Phoenix</u>, 202 F.Supp.2d 1055, 1059 (D. Ariz. 1999), aff'd, 25 F. App'x 582 (9th Cir. 2001); <u>see</u>

Smith v. City of Hemet, 394 F.3d 689, 695 (9th Cir. 2005) (en banc).

The relevant question in applying Heck is to determine if the Section 1983 suit would "necessarily imply" or "demonstrate" the invalidity of the earlier criminal conviction or sentence. Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996) (quoting Heck, 512 U.S. at 487).

It is undisputed that on March 23, 2016, Lopes-Salas was arrested. (Affidavit In Support of Warrant of Arrest, at pp. 18-26, attached as Ex. 2 to Pla.'s CSF, ECF No. 64). He was charged with various firearms charges and with Terroristic Threatening in the First Degree in violation of Hawaii Revised Statutes § 707-716(1)(e). Terroristic Threatening pursuant to Haw. Rev. Stat. § 707-716(1)(e) requires that a person threaten another with a dangerous instrument or firearm.

The Complaint against Lopes-Salas was filed on April 4, 2016, in the Circuit Court of the First Circuit, State of Hawaii. Lopes-Salas was specifically charged for the conduct of threatening Officer Parson with the loaded 9mm semi-automatic Glock pistol that he held in his right hand during the pursuit on March 23, 2016. (Complaint, dated April 4, 2016, Cr. No. 16-1-0496, Circuit Court of the First Circuit, State of Hawaii, attached as Ex. E to Def.'s CSF, ECF No. 55-3). The Complaint charged Lopes-Salas as follows:

> On or about March 23, 2016, in the City and County of Honolulu, State of Hawaii, Carlos Lopes-Salas, Jr. threatened, by word or conduct, to cause bodily injury

to Tyler Parson, with the use of a dangerous
instrument, to wit, a semiautomatic firearm as defined
in Section 706-660.1 of the Hawaii Revised Statutes,
with the intent to terrorize, or in the reckless
disregard of terrorizing Tyler Parson, thereby
committing the offense of Terroristic Threatening in
the First Degree, in violation of Section 707-716(1)(e)
of the Hawaii Revised Statutes.

(Id.)

On June 24, 2016, Lopes-Salas pled no contest to Terroristic

Threatening in the First Degree in violation of Haw. Rev. Stat. §

707-716(1)(e) as charged in the Complaint in Cr. No. 16-1-0496.

(No Contest Plea, dated June 24, 2016, Cr. No. 16-1-0496, Circuit

Court of the First Circuit, State of Hawaii, attached as Ex. F to

Def.'s CSF, ECF No. 55-5).

On September 7, 2016, Lopes-Salas was sentenced to five

years incarceration for Terroristic Threatening in the First

Degree and the Judgment of Conviction was entered.  (Docket Entry

dated September 7, 2016, Cr. No. 16-1-0496, Circuit Court of the

First Circuit, State of Hawaii, attached as Ex. G to Def.'s CSF,

ECF No. 55-7).

Heck precludes Plaintiff from bringing the Excessive Force

claim against Officer Parson given Lopes-Salas's plea to

threatening Officer Parson with the loaded 9mm semi-automatic

Glock pistol on March 23, 2016.

The timeline of a plaintiff's excessive force claim is

integral in evaluating the application of the Heck doctrine.  The

Ninth Circuit Court of Appeals has explained that Heck will not

bar a claim for excessive force where the force complained of

occurred separately from the conduct that constituted the basis for the conviction.  Smith, 394 F.3d at 696-98.

For example, the Ninth Circuit Court of Appeals has held that Heck does not preclude an excessive force claim where the force is "distinct temporally or spatially from the factual basis for the person's conviction."  Beets v. Cnty of Los Angeles, 669 F.3d 1038, 1042 (9th Cir. 2012).

In Curry v. Baca, 371 Fed. Appx. 733, 734 (9th Cir. 2010), the plaintiff pointed a firearm at police officers, who then began pursuing him.  Id.  During the pursuit, the officers shot him.  Id.  Curry was convicted in California state court of Assault on a Peace Officer with a Semi-Automatic Firearm for pointing the firearm at the officers.  Id. at 733.

Curry sued the officers for excessive force as a result of the shooting.  Id.  Curry argued that his excessive force claim was not barred by Heck due to the temporal limitation between his pointing the firearm at the officers, and the pursuit followed by the shooting.  Both the district court and the appellate court disagreed.  The Ninth Circuit Court of Appeals explained that:

> The allegedly excessive police conduct here—shooting Curry while pursuing him—falls within the temporal scope of the assault because the moment Curry pointed his firearm at the officers, they began pursuing him. Therefore, the officers' use of force "is part of a single act for which the jury found that [Curry] bears responsibility."

Id. at 734.

Just as in Curry, the Heck doctrine applies to bar Plaintiff's excessive force claim.  The nature of Lopes-Salas's

conviction for Terroristic Threatening in the First Degree for threatening Officer Parson with a firearm is plainly inconsistent with the excessive force claim asserted by the Plaintiff. Hendrix v. Kint, 18-cv-06644-EMC, 2019 WL 1643655, *3 (N.D. Cal. Apr. 16, 2019). Lopes-Salas's conviction for pointing the firearm at Officer Parson falls within the temporal scope of the pursuit and arrest. There are no other facts to establish a different timeline for when Lopes-Salas may have threatened Officer Parson.

The fact that Lopes-Salas entered into a no contest plea does not alter the analysis. A plea of nolo contendere has the same effect as a guilty plea for the purpose of applying the Heck doctrine. Nuno v. Cnty. of San Bernadino, 58 F.Supp.2d 1127, 1138-39 (C.D. Cal. 1999).

The Hawaii Supreme Court examined the specific requirements for a conviction for Terroristic Threatening in the First Degree in State v. Valdivia, 24 P.3d 661, 671-72 (Haw. 2001). The Hawaii Supreme Court held that Terroristic Threatening requires a "true threat," conveying to the person to whom it was directed a "gravity of purpose" and "imminent prospect of execution." Id. (citing State of Hawaii v. Chung, 862 P.2d 1063, 1067-69 (Haw. 1993)). The threat must be objectively capable of inducing a reasonable fear of bodily injury in the person at whom the threat was directed. Id. at 673. Physical conduct alone provides the basis for terroristic threatening when a firearm is used to induce a reasonable fear of bodily injury in the person at whom

41

it is directed. State of Hawaii v. Martins, 102 P.3d 1034, 1042 (Haw. 2004).

Here, there is no dispute that Lopes-Salas used a semi-automatic pistol to threaten Officer Parson as set forth in the Criminal Complaint. (Complaint, dated April 4, 2016, Cr. No. 16-1-0496, Circuit Court of the First Circuit, State of Hawaii, attached as Ex. E to Def.'s CSF, ECF No. 55-3; No Contest Plea, dated June 24, 2016, Cr. No. 16-1-0496, Circuit Court of the First Circuit, State of Hawaii, attached as Ex. F to Def.'s CSF, ECF No. 55-5). There is no dispute that Lopes-Salas pled guilty to using the firearm to threaten Officer Parson and that Hawaii law requires that the victim perceive a "true" and "imminent" threat in order for there to be a conviction. Pursuant to Hawaii law, the threat must be objectively capable of inducing a reasonable fear of bodily injury in the person at whom the threat was directed. Valdivia, 24 P.3d at 673; see Martins, 102 P.3d at 1042-43.

Plaintiff's Section 1983 Excessive Force claim against Officer Parson attempts to dispute the factual basis that was required for Lopes-Salas to be found guilty of Terroristic Threatening in the First Degree. Cunningham v. Gates, 312 F.3d 1148, 1154-55 (9th Cir. 2002). Success on Plaintiff's excessive force claim would invalidate the imminent and reasonable fear of bodily injury that was required for Officer Parson to perceive for Lopes-Salas's Terroristic Threatening conviction to stand. Barber v. Williams, 13-cv-00538-GMN-CWH, 2017 WL 1900971, *3 (D.

Nev. May 9, 2017) (finding <u>Heck</u> barred plaintiff's excessive force claim because the plaintiff pled guilty to charges of resisting a public officer and assault with a deadly weapon).

The <u>Heck</u> doctrine bars Plaintiff's excessive force claim due to Lopes-Salas's conviction for Terroristic Threatening in the First Degree.

## CONCLUSION

Officer Parson is entitled to summary judgment as to Plaintiff's lone claim for Excessive Force in violation of the Fourth Amendment to the United States Constitution.

<u>First</u>, Officer Parson's use of force was reasonable given the totality of the undisputed facts which demonstrate that Lopes-Salas posed an immediate threat to the safety of the officers and others at the time of the shooting. <u>Graham</u>, 490 U.S. at 396.

<u>Second</u>, Officer Parson is entitled to qualified immunity. A reasonable officer would not have understood that Officer Parson's conduct violated a constitutional right that was clearly established on March 23, 2016. <u>Kisela</u>, 138 S.Ct. at 1154-55.

<u>Third</u>, the <u>Heck</u> doctrine bars Plaintiff's Excessive Force claim for damages. Success of Plaintiff's Excessive Force claim would invalidate Lopes-Salas's conviction for Terroristic Threatening in the First Degree for threatening Officer Parson on March 23, 2016. <u>Curry</u>, 371 Fed. Appx. at 734.

43

Defendant Tyler Parson's Motion for Summary Judgment (ECF No. 57) is **GRANTED.**

There are no remaining claims or Parties.

The Clerk of Court is **ORDERED** to **ENTER JUDGMENT** in favor of Defendant Parson and to **CLOSE THE CASE.**

IT IS SO ORDERED.

DATED: November 3, 2020, Honolulu, Hawaii.

Helen Gillmor
United States District Judge

Josephine Louise Salas, as Personal Representative of the Estate of Carlos Lopes-Salas, Jr. v. Tyler Parson; John Doe 1-10; Jane Does 1-10; Doe Partnerships 1-10; Doe Entities 1-10; Doe Governmental Units 1-10; Civ. No. 18-00113 HG-WRP; **ORDER GRANTING DEFENDANT TYLER PARSON'S MOTION FOR SUMMARY JUDGMENT (ECF No. 57)**